UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| DIANE PATTON, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CAROLYN W. COLVIN, ) <br> **Acting Commissioner of the Social** ) <br> **Security Administration,** ) <br> ) <br> Defendant. ) <br> _____ ) | Case No. EDCV 12-02091 AJW <br><br> MEMORANDUM OF DECISION |

Plaintiff filed this action seeking reversal of the decision of defendant, the Acting Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for disability insurance benefits and supplemental security income ("SSI") benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

## Administrative Proceedings

The parties are familiar with the procedural history. [See JS 2]. Plaintiff, who is now 55 years old, alleges that she has been disabled since June 1, 2006. [Administrative Record ("AR") 20]. In an August 5, 2011 written hearing decision that constitutes the final decision of the Commissioner, an administrative law judge ("ALJ") found that plaintiff was not disabled during the period from January 2008 through December 2009 because she worked at the substantial gainful activity (SGA") level during that period. [AR 22-23]. With respect to the periods from June 1, 2006 through December 31, 2007, and January 1, 2010 through the

date of her decision, the ALJ found that plaintiff had severe impairments consisting of degenerative disc disease, lumbar spine spondylosis, facet joint arthritis at the L4-L5 and L5-S1 level, fibromyalgia, and depression, and that her impairments did not meet or equal a listed impairment. [AR 23-24]. The ALJ determined that plaintiff retained the residual functional capacity ("RFC") for light work, except that she: (1) needed to alternate sitting and standing at 90 minute intervals for one to five minutes at her workstation; (2) could not climb ladders, ropes, or scaffolds, but occasionally could climb ramps or stairs; (3) occasionally could kneel, stoop, crawl, or crouch; (4) frequently could use her hands for gross manipulation; (5) had no restriction in fine finger manipulation; (6) must avoid concentrated exposure to pulmonary irritants such as dust, fumes, gases, or odors; (7) could sustain attention and concentration for at least two-hour intervals; (8) could respond appropriately to supervisors, co-workers, and the general public; and (9) could understand and carry out one- or two-step tasks or instructions. [AR 24].

The ALJ found that, during the periods when plaintiff was not engaged in SGA, her RFC precluded performance of her past relevant work but did not preclude her from performing alternative jobs that exist in significant numbers in the national economy. Specifically, the ALJ found that during those periods. plaintiff could perform the alternative jobs of electronics assembler worker, packing machine operator, and cashier. [AR 28-29]. Accordingly, the ALJ concluded that plaintiff was not disabled at any time through the date of her decision. [AR 29].

### Standard of Review

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or is based on legal error. Stout v. Comm'r Social Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (internal quotation marks omitted). The court is required to review the record as a whole and to consider evidence detracting from the decision as well as evidence supporting the decision. Robbins v. Soc. Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006); Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas,

1 | 278 F.3d at 954 (citing Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)).

## Discussion

### Treating physician's opinion

Plaintiff contends that the ALJ erred in evaluating the opinions of treating physician Luis Chamon, D.O. and Roja Tooma, M.D. [JS 3-12].

Dr. Chamon signed a physical capacity assessment form dated April 27, 2009 indicating that plaintiff could perform less than sedentary work due to "back pain" and because her "medications can affect concentration." [AR 258-260].

Dr. Tooma signed a physical capacity assessment form dated February 23, 2011 indicating that plaintiff could perform less than sedentary work due to "pain" and "weakness" from spinal stenosis and fibromyalgia. Dr. Tooma also indicated that plaintiff had environmental restrictions requiring her to "avoid even moderate exposure" to "extreme cold" and "noise," and to avoid all exposure to hazards, such as machinery or heights. Dr. Tooma said that extreme cold "remarkably aggravates pain," that plaintiff "cannot concentrate" with noise, and that she needed to avoid hazards because she had difficulty ambulating due to her diagnoses of spinal stenosis and fibromyalgia. He also said that plaintiff used a scooter intermittently, cannot kneel or crawl, had difficulty balancing, felt weak, and experienced pain that she treated with narcotic analgesics and sleep medication. [AR 581-583].

The ALJ wrote that she had read and considered the forms completed by Dr. Chamon and Dr. Tooma, and that "[t]hese checklist-style forms appear to have been completed as an accommodation to the claimant and include only conclusions regarding functional limitations without any rationale for those conclusions." [AR 27]. The ALJ said that she gave those opinions no weight because they were not supported by objective evidence. [AR 27].

The ALJ is required to provide clear and convincing reasons, supported by substantial evidence in the record, for rejecting an uncontroverted treating source opinion. If contradicted by that of another doctor, a treating or examining source opinion may be rejected for specific and legitimate reasons that are based on substantial evidence in the record. Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007); Tonapetyan v. Halter, 242 F.3d 1144, 1148-1149 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995).

The ALJ provided specific and legitimate reasons based on substantial evidence for rejecting the

opinions of Dr. Chamon and Dr. Tooma, which were controverted by the opinions of the consultative examining internist, Dr. Fabella [AR 26-27, 481-486] and the nonexamining state agency physician, Dr. Kalmar [AR 398-405]. Neither Dr. Chamon nor Dr. Tooma cited any objective evidence or clinical findings to support the extreme functional limitations they endorsed. See Bayliss, 427 F.3d at 1217 (noting that an ALJ need not accept a physician's opinion that is conclusory and inadequately supported by clinical findings); Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004) (stating that "an ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole, or by objective medical findings," and holding that the ALJ did not err in giving "minimal evidentiary weight" to controverted treating source opinions that were "in the form of a checklist," and lacked supportive objective medical findings). Dr. Chamon and Dr. Tooma mentioned only plaintiff's subjective symptoms of pain, weakness, and difficulty balancing and concentrating. The ALJ found that plaintiff's complaints of disabling pain, weakness, and other subjective symptoms were not fully credible. Plaintiff has not challenged the ALJ's credibility finding.[1] Accordingly, the ALJ permissibly rejected plaintiff's treating doctors' assessments that were based primarily on plaintiff's properly discredited subjective complaints (regardless of whether or not those assessments could be considered an "accommodation" to plaintiff). See Morgan, 169 F.3d at 602 ("A physician's opinion of disability 'premised to a large extent upon the claimant's own accounts of his symptoms and limitations' may be disregarded where those complaints have been 'properly discounted.'") (quoting Fair v. Bowen, 885 F.2d 597, 605 (9th Cir. 1989)); Brawner v. Sec'y of Health & Human Servs., 839 F.2d 432, 433-34 (9th Cir. 1988) (per curiam) (stating that medical conclusions are entitled to less weight to the extent that they rely on the claimant's properly discounted subjective history).

Plaintiff also contends that the ALJ's finding that neither of plaintiff's treating physicians' opinions was supported by substantial evidence triggered a duty to recontact those doctors to obtain clarification of the basis for their opinions. The ALJ's "duty to develop the record further is triggered only when there is

---

[1] The ALJ also found that plaintiff was not disabled between January 2009 and December 2009 because she worked as a cosmetologist at the substantial gainful activity level, another finding that is unchallenged. [AR 22-23]. Dr. Chamon's disability opinion is dated April 27, 2009, when plaintiff testified that she was still working as a hairdresser. [AR 41-44].

ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." Mayes v. Massanari, 276 F.3d 453, 459-460 (9th Cir. 2001) (rejecting the argument that the ALJ breached his duty to develop the record as an impermissible attempt to shift the burden of proving disability away from the claimant). Dr. Kalmar did, in fact, attempt to recontact Dr. Chamon to ascertain the basis for his very restrictive RFC assessment. Dr. Kalmar left telephone messages for Dr. Chamon with the receptionist at Arrowhead Family Health Clinic on August 4, 2009 and again on August 6, 2009 requesting clarification of Dr. Chamon's April 27, 2009 opinion. Dr. Kalmar noted that as of August 11, 2009, the date of his final report, Dr. Chamon had not returned the call. [AR 405]. Because the ALJ attempted to recontact Dr. Chamon, lawfully rejected the unsupported, "check-the-box" opinions of both Drs. Chamon and Tooma, and relied on substantial evidence in the form of the examining and nonexamining physicians' reports, the record was not ambiguous or inadequate to support the ALJ's determination.

**Alternative jobs**

Plaintiff contends that the ALJ erred in finding her not disabled at step five because an unresolved conflict exists between the ALJ's finding that plaintiff's RFC allows her to perform the alternative jobs of electronics assembler worker, packing machine operator, and cashier and the classification of those jobs in the Dictionary of Occupational Titles ("DOT"). Plaintiff contends that information in the DOT establishes that those jobs require a "Reasoning Development" level and other work-related abilities that exceed plaintiff's RFC as found by the ALJ. [JS 12-31].

The Commissioner relies primarily on the DOT for "information about the requirements of work in the national economy." Massachi v. Astrue, 486 F.3d 1149, 1153 (9th Cir. 2007) (quoting Social Security Ruling ("SSR") 00-4p, 200 WL 1898704, at *2)). There is a rebuttable presumption that the information in the DOT and its supplementary Selected Characteristics is controlling. Villa v. Heckler, 797 F.2d 794, 798 (9th Cir. 1986); accord, Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995). The Commissioner "also uses testimony from vocational experts to obtain occupational evidence." Massachi, 486 F.3d at 1153.

Under Ninth Circuit law and the SSR 00-4p[2], an ALJ may not rely on a vocational expert's testimony

---

[2] Social security rulings

are binding on all components of the Social Security Administration [SSA] and

regarding the requirements of a particular job without first inquiring whether that testimony conflicts with the DOT. If an apparent conflict exists, the ALJ must obtain an explanation for any apparent conflict, determine whether the vocational expert's explanation is reasonable, decide whether a basis exists for relying on the expert rather than on the DOT, and explain how he or she resolved the conflict. Massachi, 486 F.3d at 1152-1153; see SSR 00-4p, 2000 WL 1898704, at *2-*4. This procedural requirement "ensure[s] that the record is clear as to why an ALJ relied on a vocational expert's testimony, particularly in cases where the expert's testimony conflicts with the [DOT]." Massachi, 486 F.3d at 1153.

The ALJ failed to ask the vocational expert if his testimony conflicted with the DOT or to obtain an explanation for and resolve the apparent conflict between that testimony and the DOT. [See AR 71-77]. This was legal error. See Massachi, 486 F.3d at 1154 (reversing and remanding where "the ALJ did not ask the vocational expert whether her testimony conflicted with the [DOT] and, if so, whether there was a reasonable explanation for the conflict," and therefore the court "cannot determine whether the ALJ properly relied on her testimony") (footnotes omitted); Taylor v. Comm'r of Soc. Sec. Admin., 659 F.2d 1228, 1235 (9th Cir. 2011) (noting that the ALJ failed to ask the vocational expert whether there was a conflict between her testimony and the DOT, and that "[n]othing in the rules relieves the ALJ of the responsibility of ensuring that there was no conflict, even if the vocational expert testified that [the claimant] could perform other jobs").

The ALJ's failure to inquire of the vocational expert about any conflict with the DOT would be harmless "were there no conflict, or if the vocational expert had provided sufficient support for [his] conclusion so as to justify any potential conflicts, as in Johnson." Massachi, 486 F.3d at 1154 n.19. Plaintiff contends that there are conflicts between the vocational expert's testimony and information about those jobs in the DOT, and that neither the ALJ nor the vocational expert articulated reasons for deviating from the

---

represent precedent final opinions and orders and statements of policy and interpretations of the SSA. SSRs reflect the official interpretation of the SSA and are entitled to some deference as long as they are consistent with the Social Security Act and regulations. SSRs do not carry the force of law, but they are binding on ALJs nonetheless.

Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d. 1219, 1224 (9th Cir. 2009) (internal quotation marks, citations, alteration, and footnote omitted).

DOT. Plaintiff's argument has merit.

First, plaintiff contends that all three of the jobs identified by the vocational expert require a "Reasoning Development" level that exceeds her RFC. DOT job classifications include a "General Educational Development" ("GED") definition component, which "embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance." The GED component is comprised of three discrete scales: "Reasoning Development," "Math Development," and "Language Development." The reasoning, math, and language development scales range from Level 1 (low) to Level 6 (high).

The DOT classification for electronics assembler worker (DOT job number 726.687-010) and packing machine operator (DOT job number 920.685-078) require Level 2 reasoning, which requires the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations. The third job, cashier II (DOT job number 211.462-010) requires Level 3 reasoning, which requires the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations."

The ALJ explicitly found that plaintiff would be able to understand and carry out "1 to 2 step[ ] tasks or instructions." [AR 24]. Plaintiff contends that a limitation to one- or two-step tasks or instructions corresponds to Level 1 reasoning, which the DOT defines as the ability to "[a]pply commonsense understanding to carry out *simple* one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job." DOT, Appendix C (italics added).

As plaintiff correctly points out, this Court has held that an explicit limitation to jobs involving no more than one- or two-step instructions "corresponds to the DOT definition of Level 1 reasoning." Grigsby v. Astrue, 2010 WL 309013, at *2-*3 (C.D. Cal. Jan. 22, 2010) (holding that where the ALJ made a "clear and unambiguous" RFC finding limiting the claimant to tasks "involving two steps of instructions," the ALJ erred in relying on a vocational expert's testimony that the claimant could perform Level 2 reasoning jobs without explaining the conflict between the expert's testimony and the DOT). Plaintiff cites numerous other district court decisions that have reached the same conclusion, along with some contrary district court

1 decisions. [See JS 16-17 (collecting cases)].

2 Defendant cites an unpublished Ninth Circuit decision in which the plaintiff-appellant contended that the ALJ, who limited the plaintiff to "one to two-step simple instruction kinds of jobs," improperly relied on a vocational expert's testimony that she could perform DOT jobs requiring Level 2 or Level 3 reasoning. Bordbar v. Astrue, 475 Fed.Appx. 214, 215 (9th Cir. Jul. 30, 2012). The Ninth Circuit held that it was unnecessary to determine whether the vocational expert's testimony conflicted with the ALJ's RFC finding

> because any error was harmless. We have no doubt, based on the record, that Bordbar could perform jobs at Reasoning Level Two. Both the consultative examiner and the State Agency medical consultant opined that Bordbar could perform detailed instructions, and the ALJ found those opinions to be "reasonable." Indeed, Bordbar conceded during the administrative proceedings that her ability to follow written and spoken instructions was "good," and, even now, she does not argue that she is incapable of performing jobs at Reasoning Level Two. Thus, the ALJ properly relied on the VE's testimony about jobs at Reasoning Level Two in concluding that Borbar was not disabled.

Bordbar, 475 Fed.Appx. at 215.

As an unpublished decision, Bordbar is not binding precedent. It is also distinguishable. Plaintiff does not concede that her ability to follow instructions is "good," and she also argues that she is incapable of performing Reasoning Level 2 jobs. An apparent conflict exists between the ALJ's explicit, unambiguous finding that plaintiff is limited to "1 to 2 step[ ] tasks or instructions" [AR 24] and the vocational expert's testimony that plaintiff can perform jobs requiring more than Level 1 reasoning, which explicitly and unambiguously involves the ability to "[a]pply commonsense understanding to carry out simple one- or two-step instructions." The ALJ did not inquire about the existence of a conflict between the vocational expert's testimony and the DOT and did not identify of resolve the apparent conflict between those two sources of evidence, thereby committing legal error under Massachi and SSR 00-4p.

Second, plaintiff contends that the ALJ erred because there is an unresolved conflict between the vocational expert's testimony and the DOT's classification of the job of packing machine operator, DOT job number 920.685-078. The DOT classifies that job as medium work that requires constant handling (that is, two-thirds of the time or more) and frequent fingering (that is, from one-third to two-thirds of the time).

[JS 18]. The ALJ's hypothetical question and her RFC finding specified the ability to perform a reduced range of light work with the ability to "frequently use her hands for gross manipulation" and no limitation in fingering. [AR 24, 74-75]. Therefore, an unresolved conflict exists between the vocational expert's testimony and the DOT's classification of the job of packing machine operator as medium work that involves "constant" (rather than "frequent") handling.

Finally, plaintiff contends that the ALJ erred because there is an unresolved conflict between the vocational expert's testimony and the DOT because the ALJ found that she should avoid "concentrated exposure to pulmonary irritants such as dust, fumes, gases, or odors," and the DOT indicates that the job of electronics assembler worker would require exposure to pulmonary irritants. [AR 24]. The DOT does not classify jobs according to exposure to dust, fumes, gases, or odors, but it includes job definition components that encompass exposure to pulmonary irritants: "atmospheric conditions," "toxic caustic chemicals," and "other environmental restrictions." The DOT definition for electronics assembler worker states that no atmospheric conditions or other environmental restrictions are present, but that the job requires exposure to toxic caustic chemicals occasionally, up to one-third of the time. The ALJ precluded plaintiff from "concentrated" exposure to pulmonary irritants, but did not preclude her from moderate exposure or any exposure. Because the DOT states that electronics assembler workers are exposed to such chemicals occasionally, rather than frequently or constantly, there is no apparent conflict between the vocational expert's testimony and the DOT in this regard.

The ALJ's legal error was not harmless because: (1) the ALJ did not inquire about or identify any conflict between the vocational expert's testimony and the DOT; (2) apparent conflicts exist between those two sources of vocational evidence; and (3) neither the ALJ or the vocational expert provided a reasonable explanation to reconcile those apparent conflicts and rebut the presumption that the information in the DOT controls. See Massachi, 486 F.3d at 1153-1154 & n.19 (holding that where "the ALJ did not ask the vocational expert whether her testimony conflicted with the [DOT], and, if so, whether there was a reasonable explanation for the conflict," the ALJ's error was not harmless because there was "an apparent conflict with no basis for the vocational expert's deviation"); Pinto v. Massanari, 249 F.3d 840, 847 (9th Cir. 2001) (holding "that in order for an ALJ to rely on a job description in the [DOT] that fails to comport with a claimant's noted limitations, the ALJ must definitively explain this deviation," and reversing and

remanding where neither the ALJ nor the vocational expert provided the required explanation).

This Court declines defendant's invitation to search the record for evidence that could support the ALJ's step-five finding and concludes that a remand for further administrative proceedings is the appropriate remedy. A reviewing court such as this one is "constrained to review the reasons the ALJ asserts" to justify denying benefits, Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003), and "should not seek to fill the fact-finding role of the ALJ by developing, de novo, [its] own interpretation of" ambiguous evidence. Lingenfelter v. Astrue, 504 F.3d 1028, 1044 (9th Cir. 2007) (Beezer, J., dissenting from an order remanding for the payment of benefits) (citing INS v. Ventura, 537 U.S. 12, 16 (2002) (per curiam) ("A court of appeals is not generally empowered to conduct a de novo inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry.") (internal quotation marks omitted)); see Ayala v. Colvin, 2013 WL 951189, at *2 (C.D. Cal. Mar. 12, 2103) (reversing and remanding for further administrative proceedings where there was an apparent, unexplained conflict between the vocational expert's testimony and the DOT, and rejecting "the Commissioner's contention that the 'record as a whole,' including evidence of plaintiff's education and work experience, supports the ALJ's [step-five] determination . . . . To the extent that such evidence may have explained the deviation between the [vocational expert's] testimony and the DOT, the ALJ could have cited it as support for his step five determination but did not do so.").

**Conclusion**

For the reasons described above, the Commissioner's decision is not based on substantial evidence in the record and is not free of legal error. Accordingly, the Commissioner's decision is **reversed,** and this case is **remanded** to the Commissioner for further administrative proceedings consistent with this memorandum of decision.

**IT IS SO ORDERED.**

November 12, 2013

_____
ANDREW J. WISTRICH
United States Magistrate Judge